UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSEPH ASHBAUGH,

        Petitioner,

v.                          CASE NO. 04-CV-60049-AA
                             HONORABLE MARIANNE O. BATTANI

DAVID GUNDY,

        Respondent.

_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

      This matter is pending before the Court on petitioner Joseph Ashbaugh's application for the writ of habeas corpus under 28 U.S.C. § 2254. Respondent has urged the Court in a responsive pleading to deny the petition. The Court agrees with Respondent that Petitioner is not entitled to habeas relief. Accordingly, the habeas petition will be denied.

### I. Background

      On February 22, 2001, Petitioner pleaded guilty to: one count of extortion, MICH. COMP. LAWS § 750.213; two counts of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84; and assault with a dangerous weapon, MICH. COMP. LAWS § 750.82. In return, the prosecutor dismissed one count of first-degree criminal sexual conduct, one count of kidnapping, and a charge that Petitioner violated the conditions of probation for a previous offense. The charges arose from allegations that Petitioner and two other people threatened, beat, and sexually assaulted a mentally handicapped young man.


      The trial court sentenced Petitioner to concurrent terms of imprisonment as follows:

seventeen and a half to forty years for the extortion conviction; five to twenty years for each

count of assault with intent to do great bodily harm; and two to eight years for assault with a

dangerous weapon.  Petitioner moved for re-sentencing or for relief from judgment, but the trial

court denied his motion at a hearing held on February 4, 2002.

In an application for leave to appeal, Petitioner raised the following claims through

appellate counsel:

I.      The trial court abused its discretion in denying Mr. Ashbaugh's
        motion for relief from judgment based upon a violation of Mr.
        Ashbaugh's constitutional right to due process of law by the
        Department of Corrections' failure to comply with MCL 771.14
        and MCR 6.425 regarding the content required for a Department of
        Corrections' pre-sentence investigation report and disclosure of
        said information.

II.     The trial court abused its discretion in denying Mr. Ashbaugh's
        motion for relief from judgment based upon a violation of his right
        to due process of law by the court for failing to exercise its
        discretion in sentencing him as a habitual offender.

III.    The trial court abused its discretion in denying Mr. Ashbaugh's
        motion for relief from judgment due to a violation of his
        constitutional right to due process of law due to the ineffectiveness
        of his trial counsel for failing to mitigate his behavior in this case
        with evidence of his long-term history of mental illness and
        physical disabilities, thereby depriving the trial court of relevant
        information relative to the proper disposition of this case.

The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds

presented."  *People v. Ashbaugh*, No. 242824 (Mich. Ct. App. Nov. 14, 2002) (unpublished

opinion).


Petitioner raised the first two claims enumerated above in the Michigan Supreme Court.

He also raised a new claim, which alleged that he had not understood the court proceedings and

2

was not aware that he was facing criminal charges.  On April 29, 2003, the supreme court denied

leave to appeal.  *See People v. Ashbaugh*, No. 122917 (Mich. Sup. Ct. Apr. 29, 2003).

      Petitioner signed and dated his habeas corpus petition on February 18, 2004.  The

grounds for relief and supporting facts read:

> I.      Conviction obtained by plea of guilty which was unlawfully
> induced.
>
>       At no time did I know or did my attorney even attempt to explain
> to me what I was saying I am guilty to.  I thought that I was being
> sent to a hospital.
>
> II.      Denial of effective assistance of counsel
>
>       My state appointed attorney failed to have me be examin[ed]
> concerning my mental health to see if I was fit to stand trial.
>
> III.      Failure to comply with MCL 771.14 and MC[R] 6.425
>
>       The courts failed to take into consideration my mental health.

      Respondent filed an answer in opposition, arguing that Petitioner is not entitled to habeas

relief because his guilty plea was knowingly and voluntarily made.  The Court subsequently

appointed counsel for Petitioner, who argues in a supplemental pleading that Petitioner pleaded

guilty involuntarily and was deprived of effective assistance of counsel.

## II.  Exhaustion of State Remedies

      A preliminary question is whether Petitioner exhausted state remedies for his claims.

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his

remedies in state court.  In other words, the state prisoner must give the state courts an

opportunity to act on his claims before he presents those claims to a federal court in a habeas

petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Prisoners must "fairly present"

3

their claims "in each appropriate state court (including a state supreme court with powers of discretionary review) . . . ." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

Petitioner raised his third claim (failure to comply with MICH. COMP. LAWS §771.14 and Mich. Ct. R. 6.425) in the Michigan Court of Appeals and in the Michigan Supreme Court. He raised the first part of his second claim (counsel's failure to investigate) in the Michigan Court of Appeals, but not in the Michigan Supreme Court. He did not raise the other portions of his ineffective-assistance-of counsel claim in either state appellate court, and he presented his first claim (involuntary plea) in the Michigan Supreme Court, but not in the Michigan Court of Appeals. Thus, Petitioner's first and second claims are unexhausted.

Federal district courts ordinarily must dismiss a habeas petition containing any claims that have not been exhausted in the state courts. *Rose v. Lundy*, 455 U.S. 509, 510 (1982). Courts may adjudicate unexhausted claims "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," but only if the habeas petition is denied. 28 U.S.C. § 2254(b)(2).

Petitioner's substantive claims lack merit. Consequently, it would be a waste of time and judicial resources to require exhaustion. *See Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir. 1999) (quoting *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991)). The Court, therefore, will excuse Petitioner's failure to exhaust state remedies for all his claims and will proceed to address his claims in light of the following standard of review.

### III.  Standard of Review

Petitioner is not entitled to the writ of habeas corpus unless he can show that the state

court's adjudication of his claims --

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original).

## IV. Discussion

### A. Voluntariness of the Plea

5

Petitioner alleges that his plea was invalid because it was involuntary.  He asserts that  he did not understand the charges to which he was pleading guilty or the maximum penalties he was facing.  Petitioner further alleges that, due to mental illness, a learning disability, and a low intelligence quotient, he did not understand the plea proceedings and did not make an informed decision regarding his plea.  He states that he did not understand the court's questions or what he was admitting.  He allegedly followed his attorney's cues and attempted to provide answers that counsel and the court wished to hear.  Petitioner also claims that he was unaware of the high sentencing guideline calculation associated with his charges and that he pleaded guilty in the belief that he would receive leniency.

### 1.  Determining Voluntariness

Because a guilty plea involves a waiver of constitutional rights, it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).  Courts look to all the relevant circumstances when determining whether a plea was entered voluntarily. *Id.* at 749.  "A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charge against him." *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

However,

[t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every

6

> relevant factor entering into his decision.  A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Brady*, 397 U.S. at 757.  Guilty pleas must be accorded a "great measure of finality, and "[s]olemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 71, 74 (1977).  The fact that a defendant suffers from borderline retardation or below average intelligence is not dispositive of whether the defendant waived his or her rights knowingly and intelligently.  *Clark v. Mitchell*, 425 F.3d 270, 283-84 (6th Cir. 2005).

## 2.  The Facts

Petitioner was deemed competent to stand trial in an unrelated case four years before the offense in this case occurred.  *See* Petitioner's Supplemental Br., Ex. C.  At the time he pleaded guilty in this case, he was thirty-three years old, and he had earned his general equivalency degree (GED).  (Tr. Feb. 22, 2001, at 8.)  An exhibit to his supplemental brief indicates that he has a moderately severe learning disability and borderline intelligence.  He also has

> a psychiatric history of significant emotional problems, severe enough to qualify him for social security disability from the age of eighteen and also debilitating enough to lead to numerous psychiatric referrals and lengthy psychiatric hospitalizations, including psychiatric treatment while he was incarcerated, beginning at the age of fourteen.

Petitioner's Supplemental Br., Ex. A, page 9.  Petitioner alleges in an undated affidavit that, when he informed his attorney about the difficulty he experienced in understanding the court proceedings, his attorney instructed him to say "Yes" when the attorney nodded and "No" when the attorney shook his head.

Defense counsel informed the trial court at the plea that he had discussed the plea negotiations with Petitioner at length and that Petitioner understood the full ramification of his

plea and was ready to tender a guilty plea.  (Tr. Feb. 22, 2001, at 6.)  The only time that

Petitioner appeared to be confused during the plea proceeding was when the trial court asked

him whether any promises other than the plea bargain had been made to him to induce him to

plead guilty.  The colloquy reads:

> THE COURT:  Except for what has already been stated, have any promises of any kind been made to you to induce you to plead guilty?
>
> THE DEFENDANT:  Pardon me.
>
> THE COURT:  Except for what has already been stated, have any promises of any kind been made to you to induce you to plead guilty?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Let's (sic) me repeat that.  Except for what has already been stated, have any promises of any kind been made to you to induce you to plead guilty except for what we have said?
>
> THE DEFENDANT:  Okay. Okay.
>
> THE COURT:  How did  you want to respond to that?
>
> THE DEFENDANT:  Promises --
>
> MR. MARKOWSKI (defense counsel):  No.
>
> THE DEFENDANT:  No promises.  Thank you.  Sorry.

(*Id*. at 16-17.)

At all other times during the trial court's colloquy with Petitioner, Petitioner appeared to

understand the proceedings.  The charges to which he was pleading guilty were read aloud four

times, and he stated that his attorney had explained satisfactorily the nature of the charges to

him.  The maximum penalties for the crimes also were read aloud, and Petitioner denied being

promised leniency or a sentence other than the one stated in court.  He also claimed to

understand that the maximum sentences would be doubled.

In addition, Petitioner stated that the medication he was taking for seizures did not affect his ability to think. He provided an articulate factual basis for his plea, and he even corrected the trial court when the court misstated the facts and used an incorrect pronoun.[1] He said that he was pleading guilty freely and voluntarily because he was guilty and it was his own choice to plead guilty. The trial court asked Petitioner at the conclusion of the proceedings whether he had any questions or comments about the plea, its consequences, or anything else. Petitioner responded, "No, sir."

### 3.   Analysis

There is no support in the record for Petitioner's claim that he did not understand the charges or the penalties. Nor is there any indication in the record that Petitioner was promised leniency. "A mere subjective expectation of leniency is not enough." *Carwile v. Smith*, 874 F.2d 382, 385 (6th Cir. 1989). Furthermore, it may be inferred from defense counsel's comments that Petitioner had notice of the nature of the charges against him and the penalties. *See McGlocklin*, 8 F.3d at 1047 (stating that "[a] representation on the record that defense counsel has explained the charge is sufficient to show that the defendant had notice of the nature of the charge against him"); *see also Berry v. Mintzes*, 726 F.2d 1142, 1149 (6th Cir. 1984) (assuming that the petitioner's attorney informed the petitioner of the maximum sentence

---

[1]  Petitioner was charged with extorting money from the male victim by threatening to injure the victim if he did not obtain some money from his aunt. (Tr. Feb. 24, 2000, at 18-19, 23-24, 40, and 42.) The trial court asked Petitioner at the plea whether Petitioner had made a threat against the victim's aunt "with intent to extort money from *her*." (Tr. Feb. 22, 2001, at 18) (emphasis added)   Petitioner corrected the trial court by saying, "From *him*, yes." (*Id.*) (emphasis added).

because (1) there were representations on the record that counsel and the petitioner discussed the advisability of the plea, (2) counsel was an experienced criminal attorney, and (3) the petitioner had considerable experience in the criminal justice system).

The record belies Petitioner's claim that his plea was involuntary. In fact, at no point did he even attempt to withdraw his plea. At the post-conviction hearing on his motion for re-sentencing or for relief from judgment, his appellate attorney stated that Petitioner had been informed of the habitual offender enhancement and was not asking to withdraw his plea. (Tr. Feb. 4, 2002, at 3, 8.) Therefore, the state appellate court's conclusion that Petitioner's claim lacked merit did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.

## B. Assistance of Counsel

Petitioner alleges next that he was denied effective assistance of trial counsel. He contends that his trial attorney failed to: (1) investigate and present mitigating evidence of his disabilities at sentencing; (2) inform him of the consequences of his plea; and (3) correct the trial court's mistaken belief that it was required to double the maximum sentence. To prevail on this claim, Petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004).

### 1. Failure to Investigate

Petitioner alleges that his attorney failed to investigate his background and then present mitigating evidence at sentencing of his mental, emotional, and learning disabilities. According

10

to Petitioner, his attorney failed to investigate Petitioner's pre-sentence report, which contained references to a prior report and to mental health assessments that revealed Petitioner's history of mental illness.  Petitioner asserts that his attorney also failed to discover a court-ordered forensic psychological evaluation, which demonstrated that Petitioner had a history of significant emotional problems.

### a.  Relevant Court Decisions

"[A]t sentencing, a defendant must be afforded the opportunity to put forth relevant, mitigating evidence." *Skaggs v. Parker*, 235 F.3d 261, 271 (6th Cir. 2000).  "A failure to investigate, participate in, and prepare for the sentencing proceedings fails to satisfy an objective standard of reasonable representation and therefore falls below Sixth Amendment standards for effective assistance of counsel." *Arredondo v. United States*, 178 F.3d 778, 788 (6th Cir. 1999).  At least in capital cases,

> neither [the Sixth Circuit] nor the Supreme Court has hesitated to deem deficient counsel's failure to fulfill this obligation.  *See, e.g., Wiggins v. Smith*, 539 U.S. 510, 523-28 (2003) (concluding that counsel's failure to expand their investigation of the defendant's personal background, which included physical and sexual abuse, beyond the presentence investigation and Department of Social Services reports constituted constitutionally deficient performance); *Williams v. Taylor*, 529 U.S. 362, 395 (2000) (finding counsel's failure 'to conduct an investigation that would have uncovered extensive records graphically describing Williams' nightmarish childhood' deficient); *Carter v. Bell*, 218 F.3d 581, 596-97 (6th Cir. 2000) (concluding that defense counsel's failure to investigate the defendant's family, social, or psychological background 'constituted representation at a level below an objective standard of reasonableness').

*Harries v. Bell,* 417 F.3d 631, 637 (6th Cir. 2005).  The Supreme Court recently held that, "even when a capital defendant's family members and the defendant himself have suggested that no mitigating evidence is available, his lawyer is bound to make reasonable efforts to obtain and review material that counsel knows the prosecution will probably rely on as evidence of

11

aggravation at the sentencing phase of trial." *Rompilla v. Beard*, __ U.S.__, __, 125 S. Ct. 2456,

2460 (2005).

While "failure to present mitigating evidence at sentencing may constitute ineffective

assistance of counsel under the Sixth Amendment, counsel may nevertheless make a reasonable

decision that investigation is not necessary." *Coleman v. Mitchell*, 244 F.3d 533, 545 (6th Cir.

2001) (citing *Strickland*, 466 U.S. at 691). *Rompilla*, in fact, "applies [the Supreme Court's]

longstanding case-by-case approach to determining whether an attorney's performance was

unconstitutionally deficient under *Strickland.*" *Rompilla*, 125 S. Ct. at 2469 (O'Connor, J.,

concurring).

### b.  The Facts

Petitioner's attorney did not mention Petitioner's psychiatric history at the sentencing.

However, this is not a capital case, and the sentencing guidelines were applicable to the

minimum sentence.  Defense counsel was successful at reducing the sentencing guidelines score

for each offense.  As a result, the maximum minimum sentence for extortion, which carried the

most severe penalty, was reduced by two and a half years (from twenty years to seventeen and a

half years).  Defense counsel also asked the trial court to sentence Petitioner at the lower end of

the sentencing guidelines due to Petitioner's minimal criminal history.  (Tr. Mar. 29, 2001, at 3-

17.)

Moreover, the trial court appears to have been aware of Petitioner's psychiatric history.

One of the documents on which Petitioner relies is a forensic psychological evaluation of

Petitioner, which was prepared for the same trial court on October 26, 1998, in connection with

an earlier offense.  *See* Petitioner's Supplemental Br., Ex. A.  In addition, the trial court indicated

12

at the post-conviction hearing that it had acquired Petitioner's psychiatric history before it sentenced him in this case.  (Tr. Feb. 4, 2002, at 3-6.)

Petitioner himself alluded to his emotional problems at the sentencing.  He explained to the trial court that he had been diagnosed as having an explosive behavior disorder, which resulted from  a complication at birth.  Then he said, "We have addressed this before," and the trial court responded, "Yes, I know we have.  I know what you're talking about."  (Tr. Mar. 29, 2001, at 20.)

The Court concludes that defense counsel was not ineffective for allegedly failing to investigate and present mitigating evidence of Petitioner's disabilities to the trial court.  The record indicates that the trial court was already cognizant of the evidence.

### 2.  Failure to Inform Petitioner of the Consequences of his Plea

Petitioner alleges that his attorney failed to inform him of the ramifications of his plea. Petitioner maintains that defense counsel should have ensured that he understood the nature of the charges against him or the consequences of his plea, because he is a mentally ill individual with a documented learning disability and a borderline IQ of 74.  Petitioner further alleges that his attorney falsely insinuated that he would receive leniency.

"It has long been settled that 'a guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice.'"  *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). In guilty plea cases, a habeas petitioner must show that his attorney's representation fell below an objective standard of reasonableness or outside the range of competence demanded of attorneys in criminal cases.  *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985).  The petitioner must

13

also show that defense counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* at 59. The petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*     Petitioner alleges in his affidavit that, if he would have know how much time he would have to serve, he would not have pleaded guilty. The following discussion, however, indicates that defense counsel's performance was not deficient.

As previously explained, defense counsel informed the trial court that he had discussed the plea bargain at length with Petitioner and that Petitioner understood the full ramification of his plea. Petitioner himself stated that he had discussed the matter with defense counsel and that his attorney had explained the nature of the charges to him. Petitioner denied being promised leniency or a specific sentence in return for his plea, and he claimed to understand the penalties for the crimes. He also claimed to be satisfied with his attorney's advice and services. Thus, there is no support in the record for Petitioner's contention that defense counsel failed to inform Petitioner of the charges or the consequences of his plea.

The trial court also provided information about the consequences of Petitioner's plea. The court listed the charges, explained that Petitioner was waiving certain constitutional rights by pleading guilty, and explained that the maximum penalties would be doubled. The trial court's proper colloquy with Petitioner cured any misunderstanding Petitioner may have had about the consequences of his plea. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999).

### 3.  Failure to Make an Argument about the Habitual Offender Statute

Petitioner contends that the trial court operated under the false assumption that it was required to double Petitioner's maximum sentence under the habitual offender statute.

14

Consequently, alleges Petitioner, his trial attorney should have argued that the trial court was not required to enhance the sentence by doubling the maximum sentence.

In Michigan, the maximum sentence of a convicted person who has two or more prior felony convictions may be doubled.  MICH. COMP. LAWS § 769.11.  However, "[a] trial court, when sentencing a defendant as an habitual offender, must exercise its discretion in setting the maximum sentence, that is, it is not required by law to increase the maximum sentence."  *People v. Turski*, 436 Mich. 878, 878; 461 N.W.2d 366, 366 (1990).

The trial court asked Petitioner at his plea whether he understood that pleading guilty to being a third habitual offender meant the maximum penalties would be doubled.  (Tr. Feb. 22, 2001, at 14, 20.)  Petitioner interprets these questions to mean that the trial court thought it was obligated to double Petitioner's maximum sentence.  Whether the trial court actually operated under a misapprehension of state law is questionable.  When Petitioner raised the issue at his post-conviction hearing, the trial court failed to say whether it knew it possessed discretionary authority not to sentence Petitioner to twice the maximum penalty under law.  (Tr. Feb. 4, 2002, at 8-9.)  Thus, the record is inconclusive as to whether the trial court operated under a false assumption.

Even assuming that the trial court was unaware of its discretion under the statute, it declined to re-sentence Petitioner after being advised of its discretionary authority and after being asked to impose a different sentence.  Petitioner therefore has failed to show how his attorney's omission prejudiced the outcome of the sentencing.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Strickland*, 466 U.S. at 691.

15

#### 4. Conclusion on the Ineffective-Assistance-of-Counsel Claim

The Court concludes that defense counsel was not constitutionally ineffective during the plea and sentence proceedings. Consequently, the state appellate court's conclusion that Petitioner's claim had no merit did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.

### C. Failure to Comply with State Law

The third and final habeas claim alleges that the Michigan Department of Corrections violated MICH. COMP. LAWS §771.14 and Michigan Court Rule 6.425, which prescribe the minimum contents of the presentence report and mandate disclosure of the report to the defendant before sentencing. An alleged violation of state law is not a basis for habeas corpus relief. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). It simply "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court may grant the writ of habeas corpus only if the petitioner demonstrates that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Because Petitioner has not alleged a federal constitutional error, he has no right to habeas corpus relief on the ground that state officials failed to comply with MICH. COMP. LAWS §771.14 and Michigan Court Rule 6.425.

### V. Conclusion

Petitioner's claims lack merit. Accordingly, the application for a writ of habeas corpus [Doc. #1, Mar. 8, 2004] is DENIED.

s/Marianne O. Battani
MARIANNE O. BATTANI
Dated: December 16, 2005                    UNITED STATES DISTRICT JUDGE